UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| KALLI PRENDERGAST,<br>Plaintiff,<br>v.<br>CITY OF RENO, *et. al.*,<br>Defendants. | Case No. 3:24-cv-00491-MMD-CSD<br>ORDER |

## I. SUMMARY

This civil rights action arises from an incident involving alleged law enforcement misconduct leading up to, resulting in, and following an arrest and imprisonment in Reno, Nevada on July 11, 2024. (ECF No. 1 ("Complaint").) Plaintiff Kalli Prendergast sued Defendants City of Reno (the "City"), Reno Police Department Detective Eric Hague ("Detective Hague"), Washoe County (the "County"), and Washoe County Sheriff's Deputy Shelly L. Tone ("Deputy Tone"), bringing Fourth Amendment unlawful detention, arrest, and search and seizure claims under 42 U.S.C. § 1983 and associated state law tort claims. (*Id.* at 16-23.) Before the Court are Defendants' motions for summary judgment. (ECF No. 40 ("County's Motion")[1]; ECF No. 42 ("City's Motion")[2].) For the reasons discussed below, the Court will deny the Motions, in part, as the parties dispute various material facts relating to the existence of probable cause. The Court will grant the

[1]The County's Motion (ECF No. 40) is filed by Defendants Washoe County and Deputy Tone (collectively, "County Defendants"). Plaintiff filed a response (ECF No. 45), and Defendants replied (ECF No. 51).

[2]The City's Motion (ECF No. 42) is filed by Defendants City and Detective Hague (collectively, "City Defendants"). Plaintiff filed a response (ECF No. 45), and Defendants replied (ECF No. 50).

Motions, in part, as to the dismissal of the § 1983 claims against the City and the County based on Prendergast's failure to properly allege a *Monell* claim in the Complaint.

## II. RELEVANT BACKGROUND[3]

This case arises from injuries and damages Prendergast alleges she sustained following her detention, arrest, and prosecution for the alleged unlawful use of a debit card on July 11, 2024 by Detective Eric Hague of the Reno Police Department ("RPD") and Deputy Shelly L. Tone of the Washoe County Sheriff's Office. (ECF No. 1.) Prendergast alleges that Defendants lacked probable cause to arrest her and that they unlawfully seized her personal property during the course of the arrest. (*Id.* at 1, 12.) Defendants, to the contrary, contend that the investigation established sufficient probable cause supporting Prendergast's arrest. (ECF Nos. 40, 42.)

Prendergast is a professional photographer hired to photograph weddings and other events. (ECF No. 1 at 4.) On June 15, 2024, Prendergast photographed the wedding of Ryan Hauder and Jake Trujillo—her former high school classmates—at the Model Farm Event Center in Washoe County, Nevada. (*Id.*) Defendants assert that, during the wedding, maid of honor Mackenzie O'Connell's vehicle was allegedly burglarized and a black Lululemon belt bag containing a wallet, credit and debit cards, and other personal property was reported stolen. (ECF No. 42 at 4; ECF No. 42-4 at 20-21; *see also* ECF No. 1 at 7.) O'Connell testified that her stolen debit card was later used at several businesses in Reno, including a McDonald's and a Chevron gas station.[4] (ECF No. 42-4 at 21.)

After the wedding, Prendergast drove to Sacramento, California, where she stayed with family before flying to Ohio on June 17, 2024. (ECF No. 1 at 5-6.) Prendergast alleges

---

[3]The following facts, adapted primarily from the Complaint and Defendants' respective motions, are undisputed unless otherwise noted.

[4]The Complaint notes that O'Connell's debit card was allegedly used at a "Jackson's convenient store" and a McDonald's in Reno in the early morning of June 17, 2024. (ECF No. 1 at 5-7.) The Court notes that "Jackson's" is partnered with Chevron gas station in Reno and is thus synonymous with "Chevron" for the purposes of this Order.

that she was in Sacramento—not Reno—when the disputed debit card transactions occurred and that she possessed evidence corroborating her whereabouts, including an airline boarding pass, witness accounts, and data from her Oura activity- and sleep-tracking ring.[5] (*Id.* at 5-6, 11.) Defendants dispute this evidence and contend that the investigation nevertheless established probable cause linking Prendergast to the alleged offenses. (ECF Nos. 40, 42.)

O'Connell subsequently identified Prendergast as the individual depicted in surveillance still images obtained from the Chevron where the debit card was allegedly used. (ECF No. 1 at 8; ECF No. 42-4 at 24-27.) Detective Hague then reviewed video surveillance footage from the Chevron—which he obtained from the on-duty store manager and recorded on his work cell phone—and contacted Prendergast regarding the allegations. (ECF No. 1 at 8-9; ECF No. 42-1 at 3; ECF No. 43.) Prendergast voluntarily agreed to participate in a phone interview with Detective Hague, during which she denied any involvement in the alleged theft and explained that she was not in Reno when the debit card transactions occurred. (ECF No. 1 at 8-9.)

On July 11, 2024, Prendergast agreed to meet with Detective Hague at the Reno Police Department to review the video surveillance footage and discuss the allegations. (*Id.* at 10.) The parties dispute the events that followed. Prendergast alleges that Detective Hague and Deputy Tone—who was present for the interview and the subsequent arrest but not involved in the questioning—failed to conduct a reasonable investigation, refused to consider evidence corroborating her whereabouts, and arrested her without probable cause for "felony use of a credit card without consent." (*Id.* at 10-13.)

Following Prendergast's warrantless arrest, she alleges that Detective Hague then seized her black Lululemon belt bag as evidence. (*Id.* at 12.) Defendants contend the

[5]According to the Complaint, the disputed debit card transactions occurred on June 17, 2024. (ECF No. 1 at 5-6.) In particular, O'Connell's debit card was used at approximately 4:54 a.m. at the McDonald's and again at approximately 6:38 a.m. at the Jackson's convenience store. (*Id.*) The parties dispute the transaction timing and the surveillance evidence relied upon during the investigation.

seizure was lawful under the plain-view exception[6] to the Fourth Amendment's warrant requirement because the belt bag was allegedly similar to the bag reported stolen by O'Connell. (ECF No. 42 at 17.) Detective Hague and Deputy Tone then transported Prendergast to the Washoe County jail, "where she was booked, yelled at, ordered to undress, searched and ordered to shower." (ECF No. 1 at 13.) Prendergast alleges that Detective Hague subsequently delivered her seized purse to O'Connell. (*Id.*)

Prendergast was charged with the "felony use of a credit card without authorization." (*Id.* at 14-15.) However, the district attorney ultimately dropped all charges against Prendergast prior to her preliminary hearing, and the case was dismissed. (*Id.* at 15; *see also* ECF No. 45-11.) Prendergast alleges that she suffered "personal" and "business" reputational harm, "substantial mental anguish," and "emotional distress" as a result of these events. (ECF No. 1 at 15.)

Prendergast subsequently initiated this action. The Complaint asserts a federal constitutional claim against all Defendants for unlawful detention and arrest in violation of the Fourth Amendment under 42 U.S.C. § 1983. (*Id.* at 16-17.) Prendergast asserts a second Fourth Amendment claim against Detective Hague and the City only for unreasonable search and seizure of personal property under 42 U.S.C. § 1983. (*Id.* at 17.) Prendergast also asserts associated state law claims against all Defendants for false arrest (*id.* at 18), false imprisonment (*id.* at 19-20), and malicious prosecution (*id.* at 20-21). Prendergast asserts claims against Detective Hague and the City only for intentional infliction of emotional distress (*id.* at 22) and conversion[7] (*id.* at 23).

///

///

---

[6]Under the plain-view exception, a warrantless seizure of an object in plain view is valid if the object's "incriminating character" is "immediately apparent" and if the officer has a "lawful right of access to the object itself." *See Horton v. California*, 496 U.S. 128, 129, 136 (1990).

[7]In her response, Prendergast stipulates to the dismissal of the conversion claim. (ECF No. 45 at 45.) Accordingly, the Court dismisses the conversion claim.

## III. DISCUSSION

Defendants seek summary judgment in their favor under Federal Rule of Civil Procedure 56 on the merits of Prendergast's claims primarily on the basis that the officers involved had probable cause to arrest Prendergast.[8] (ECF Nos. 40, 42.) The Court focuses its discussion, in part, on explaining why it disagrees with Defendants on this dispositive point as to probable cause. That is, because genuine disputes of material fact exist as to probable cause, summary judgment is not proper. *See Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) ("The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court."). The Court will address this finding's impact on not only Prendergast's constitutional claims but also on her associated state law claims.

Defendants, in the alternative, contend that qualified immunity shields the individual officers—Detective Hague and Deputy Tone—from liability on the Fourth Amendment claims under 42 U.S.C. § 1983 and that they are also entitled to discretionary act immunity. (ECF No. 40 at 19-20, 23-25; ECF No. 42 at 17-19, 23-24.) Defendants further argue that the City and Washoe County cannot be held liable for the acts of its individual officer-employees under the doctrine of *respondeat superior* and emphasize that Prendergast fails to allege any *Monell* claims in the pleadings. (ECF No. 42 at 19-20; ECF No. 40 at 18-19.) As discussed below, although the Court is unpersuaded by Defendants' qualified immunity argument, the Court will grant the Motions, in part, as to the dismissal of the § 1983 claims against the City and the County based on Prendergast's failure to properly allege a *Monell* claim.

---

[8]Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### A. Fourth Amendment Claims

The Court first addresses Prendergast's Fourth Amendment claims challenging her arrest, detention, and the seizure of her personal property (i.e., the black Lululemon belt bag) to determine whether the evidence establishes that Defendants had probable cause. Although Defendants contend that the undisputed evidence established probable cause to arrest Prendergast—relying on O'Connell's identification of Prendergast from surveillance still images (ECF No. 42-4 at 24-27; ECF No. 45-10), the Chevron video surveillance footage (ECF No. 42-1 at 3; ECF No. 43), and the fact that Prendergast arrived at the police station carrying a black Lululemon belt bag that appeared to match the description of the one reported stolen by O'Connell (ECF No. 42 at 6; ECF No. 40 at 7; ECF No. 40-15 at 7)—the Court disagrees. Viewing the evidence in a light most favorable to Prendergast as the non-moving party, the record contains multiple genuine disputes of material fact from which a reasonable juror could thus infer that Defendants lacked probable cause at the time of both the arrest and the seizure of the Lululemon belt bag.[9]

A plaintiff may bring a claim for false arrest or false imprisonment under § 1983 by alleging a violation of their Fourth Amendment right to be free from unreasonable seizure of their person. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923-25 (9th Cir. 2001). "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was made without probable cause or other justification." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964-65 (9th Cir. 2001) (citation omitted). "[A] warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (internal citation omitted). "Probable cause for a warrantless arrest exists if 'under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime.'" *United States v. Fixen*, 780 F.2d

---

[9]In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

1434, 1436 (9th Cir. 1986) (internal quotations omitted). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *see also United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) ("[t]he arresting officers' subjective intention ... is immaterial in judging whether their actions were reasonable for Fourth Amendment purposes.") (citation omitted).

The Fourth Amendment provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const., amend. IV. A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 68 (1992). Generally, "a seizure of personal property [is] *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983). A warrant is not required, however, where a recognized exception applies, including the plain-view exception. *See id.* To justify a warrantless seizure of an item in plain view, its "incriminating character must be immediately apparent." *See Horton v. California*, 496 U.S. 128, 136 (1990) (applying the plain-view exception where the officers noticed weapons while executing a search warrant for the proceeds of a robbery). The Ninth Circuit has found the "immediately apparent" prong may be satisfied when officers have probable cause to believe evidence is "illegal" or "associated with criminal activity." *See United States v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005) (citing *Horton*, 496 U.S. at 131 & n1).

To counter Defendants' evidence, Prendergast first disputes the credibility of O'Connell's identification. (ECF No. 45 at 13.) In particular, she points to O'Connell's deposition testimony, in which O'Connell conceded that her prior statement regarding a "100% face ID match" "wasn't truthful." (ECF No. 45-1 at 12.) Prendergast next disputes the reliability of the Chevron surveillance footage, which she contends was of "poor

quality."[10] (ECF No. 45 at 31.) She further contends that the individual depicted was not her because the woman shown had "had blonde streaks in her hair that did not match Prendergast's hair, [and] wore an apple watch that Prendergast did not own." (*Id.*) Prendergast also contends that the vehicles observed in the McDonald's and Chevron footage did not match any vehicle she owned or drove. (*Id.*)

Moreover, Prendergast asserts that Defendants willfully disregarded exculpatory evidence in effectuating her arrest. As she points out in pertinent part (ECF No. 45 at 17-18), Detective Hague failed to review additional available Chevron surveillance video footage, despite later acknowledging that the footage depicted an individual who *did not* appear to look like Prendergast. (ECF No. 45-2 at 19.) In reply, Defendants counter that Prendergast's hair had later been "cut and colored, removing any traces of blond highlights." (ECF No. 50 at 3 (citing ECF No. 42-1 at 7); *see also* ECF No. 40-1 at 5.)

Finally, in addition to alleging unlawful seizure of personal property, Prendergast disputes that her possession of a black Lululemon belt bag contributed to probable cause, arguing that the bag is a "common" consumer accessory, that she owned an identical bag before the alleged theft, which was "older" and "more worn" than the bag in question, and that photographs on her social media account allegedly depict her wearing the same bag months before the wedding. (ECF No. 45 at 23; ECF No. 45-14 at 6; ECF No. 46 at 7.) Defendants respond that Detective Hague lawfully seized the bag under the plain-view doctrine because it appeared to match the description of O'Connell's bag. (ECF No. 42 at 16-17.) Although Defendants argue that Detective Hague was not required to know that "a black Lululemon belt bag is an incredibly common accessory" (ECF No. 50 at 5), Deputy Tone acknowledged during her deposition that such bags are "very common" among women and testified that she, herself, owns one. (ECF No. 45-6 at 16.) Viewed in a light most favorable to Prendergast, this evidence creates a genuine dispute as to

[10]Upon review of the evidence, the Court agrees that the Chevron video surveillance footage (ECF No. 43) is grainy, and facial features of the suspect are difficult to discern. Prendergast further notes that Detective Hague failed to utilize "readily available" facial recognition software from the police department, which he concedes to in his deposition. (ECF No. 45-2 at 17-18.)

whether the incriminating character of the belt bag was immediately apparent or, stated differently, whether Defendants had probable cause to believe that the bag in Prendergast's possession was the same one reported stolen under the plain-view exception. Because the record contains conflicting evidence bearing on this determination, summary judgment is not proper.

"[A]t the summary judgment stage[,] the judge's function is not [] to weigh the evidence and determine the truth of the matter," and, "[i]f reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986). Taken together, these genuine factual disputes concerning the eyewitness identification, the surveillance footage, and the weight of Prendergast's possession of a black Lululemon belt bag bear directly on the totality of the circumstances known to Defendants at the time of arrest. Here, because the probable cause determination turns on multiple disputed facts, summary judgment on Prendergast's Fourth Amendment claims is improper.

**B. Qualified Immunity**

Next, the Court turns to Defendants' argument that qualified immunity shields Detective Hague and Deputy Tone from liability on Prendergast's Fourth Amendment claims brought under 42 U.S.C. § 1983. (ECF No. 40 at 19-20; ECF No. 42 at 17-19.) Defendants contend that they are entitled to qualified immunity because they "reasonably believed" probable cause existed to arrest Prendergast. (ECF No. 42 at 18; ECF No. 40 at 20; ECF No. 50 at 7-8.) Prendergast responds that Defendants are not entitled to qualified immunity because they violated clearly established Fourth Amendment law along with her rights and because genuine disputes of material fact remain regarding whether probable cause existed at the time of her arrest. (ECF No. 45 at 38-40.)

Qualified immunity is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield

officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To determine whether qualified immunity applies, the Court must consider "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 232). For a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand" his conduct to violate the right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). District courts have discretion to address these prongs in any order. *Pearson*, 555 U.S. at 236.

It is clearly established that the Fourth Amendment prohibits a warrantless arrest unsupported by probable cause. *See* Bla*nkenhorn v. City of Orange*, 485 F.3d 463, 470-71 (9th Cir. 2007). "The test for whether probable cause exists is whether 'at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense.'" *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) (internal citation omitted). This inquiry involves a "practical, common-sense" assessment of the totality of the circumstances. *See id.* (citing *Illinois v. Gates*, 462 U.S. 213, 214 (1983)). As discussed above, however, the facts material to the probable cause determination, here, are genuinely disputed. Viewing those facts in the light most favorable to Prendergast, a reasonable jury could conclude that Detective Hague and Deputy Tone lacked probable cause and therefore violated Prendergast's clearly established Fourth Amendment rights.

Accordingly, the Court concludes that Defendants are not entitled to qualified immunity at the summary judgment stage because genuine disputes of material fact remain.

**C. Discretionary Act Immunity**

Defendants further argue that discretionary act immunity shields Detective Hague and Deputy Tone from liability. (ECF No. 42 at 23-24; ECF No. 40 at 23-25.) In particular,

Defendants argue that discretionary act immunity bars Prendergast's Fourth Amendment claims against Detective Hague (ECF No. 42 at 23-24) and her state law tort claims (i.e., false arrest, false imprisonment, and malicious prosecution) against Deputy Tone (ECF No. 40 at 23-25). For substantially the same reasons discussed above, the Court disagrees.

In Nevada, certain government actors have discretionary act immunity for their decisions. *See* NRS § 41.032[11]. An action qualifies for discretionary act immunity if it involves an element of judgement or choice and is based on considerations of public policy. *See Martinez v. Maruszczak*, 168 P.3d 720, 726, 729 (Nev. 2007) (explaining that this function "provides complete immunity from claims based on a state employee's exercise or performance of a discretionary function or duty"). Government decisions are entitled to discretionary-act immunity if they "(1) involve an element of individual judgment or choice and (2) [are] based on considerations of social, economic, or political policy." *Id.* at 729.

Here, Defendants contend that Detective Hague "used his judgment to evaluate the totality of circumstances, the reliability of evidence his investigation produced, and determine whether probable cause existed" when he decided to arrest Prendergast and seize her Lululemon belt bag. (ECF No. 42 at 24.) Separately, Defendants contend that Deputy Tone's decisions "to use her own handcuffs, to rely on a seasoned detective's probable cause determination, and to transport Plaintiff to the jail each involve elements of judgment or choice." (ECF No. 40 at 25.) The Court agrees that the officers' respective decisions to arrest and detain Prendergast and seize her Lululemon belt bag involved an exercise of individual judgment concerning whether probable cause existed. But, as discussed, because the Court has found the existence of probable cause to remain

---

[11]NRS § 41.032 provides that no action can be brought upon a political subdivision or state agency which is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused."

genuinely disputed, the Court cannot conclude that Detective Hague and Deputy Tone's challenged conduct is protected by discretionary act immunity at this stage.

**C. *Monell* Liability**

Defendants further argue that the City and the County cannot be held liable under § 1983 for the alleged constitutional violations committed by its individual officer-employees under a theory of *respondeat superior* because the Complaint contains no allegations sufficient to plead municipal liability under *Monell*. (ECF No. 42 at 19-20; ECF No. 40 at 18-19.) The Court agrees.

To hold a municipal government like the City of Reno liable under Section 1983, a plaintiff must generally demonstrate that an alleged constitutional deprivation resulted from a "policy or custom" of the municipality. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1167-68 (9th Cir. 2014) (finding a plaintiff must show an "'action pursuant to official municipal policy caused [his] injury") (internal citation removed). It is not sufficient to allege that a municipal defendant is responsible for its officials' or employees' conduct on a *respondeat superior* basis. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."); *Gordon v. Cnty. of Orange*, 6 F.4th 961 (9th Cir. 2021) (noting that municipal liability "may not be predicated on isolated or sporadic incidents, but rather must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy") (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

Here, the Court agrees that Prendergast fails to properly allege a claim against the City and the County under the *Monell* standard. *See Monell*, 436 U.S. at 691. The Complaint contains no facts going to any policy or custom that caused the alleged constitutional deprivations carried out by the officers involved. Rather, Prendergast simply alleges that the City and the County are "vicariously liable" for the "acts and omissions" of Detective Hague and Deputy Tone under the doctrine of *respondeat superior*. (ECF

No. 1 at 16-17.) Such allegations are insufficient to establish municipal liability under § 1983. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 403.

Prendergast contends in response that the constitutional violations resulted from the City and County's inadequate training and supervision of its detectives in investigative techniques, including probable cause. (ECF No. 45 at 47-48.) A municipality may, in certain circumstances, be liable under § 1983 where a plaintiff establishes "that inadequate training or supervision [of city personnel] was the *moving force* behind the deprivation." *See Sandoval*, 756 F.3d at 1168 (emphasis added). But Prendergast did not allege such a theory in the Complaint nor did she identify any facts supporting the existence of a City or County policy or custom of inadequate training or supervision. Prendergast's attempt to raise this theory for the first time in her opposition does not cure the absence of such allegations in her initial pleadings.

Accordingly, the Court grants summary judgment in Defendants' favor as to Prendergast's first § 1983 claim brought against both the City and the County and second § 1983 claim brought against the City.

**D. State Law Claims**

The Court's conclusion that genuine disputes of material fact exist regarding probable cause likewise precludes summary judgment on Prendergast's associated state law claims for false arrest, false imprisonment, and malicious prosecution. This is because these claims are premised on an absence of probable cause. *See, e.g.*, *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981) (quoting *Marschall v. City of Carson*, 464 P.2d 494 (Nev. 1970)) ("To establish false imprisonment of which false arrest is an integral part, it is ... necessary to prove that the person be restrained of his liberty under the probable imminence of force without any legal cause or justification."); *Coleman v. Las Vegas Metro. Police Dep't*, 730 F. Supp. 3d 1097, 1116 (D. Nev. 2024) (quoting *Thompson v. Clark*, 596 U.S. 36, 44, 49 (2022)) (to prevail on a claim of malicious prosecution, a plaintiff "must establish that the charges against him were 'instituted without any probable cause'"); *Lassiter v. City of San Bremerton*, 556 F.3d 1049, 1054-

55 (9th Cir. 2009) ("probable cause is an absolute defense to malicious prosecution"). The Court therefore denies Defendants' Motions as to these three state law claims.

The Court likewise denies summary judgment on the intentional infliction of emotional distress claim against Detective Hague and the City. A claim for intentional infliction of emotional distress requires "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 625 P.2d 90, 91-92 (Nev. 1981). The emotional distress must be so severe and of such intensity that no reasonable person could be expected to endure it. *See Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). Defendants argue that they are entitled to summary judgment on this claim because Prendergast has failed to provide evidence of "physical injury" resulting from the alleged emotional distress. (ECF No. 42 at 22.) Prendergast counters that the record contains evidence that, following her arrest, she experienced severe anxiety, panic attacks, insomnia, loss of appetite, depression, and other physical symptoms and illnesses. (ECF No. 45 at 43-45; ECF No. 45-12 at 5-7; ECF No. 45-14 at 5.) A reasonable juror could construe these symptoms as physical manifestations of severe or extreme emotional distress. However, because this requires a fact-intensive inquiry, the Court denies Defendants' Motion as to this claim.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion, as they do not affect the outcome of the Motions.

It is therefore ordered that Defendants' motions for summary judgment (ECF No. 40, 42) are granted in part and denied in part. The Court grants summary judgment in favor of Defendants City of Reno and Washoe County on the first § 1983 claim and in

favor of Defendant City of Reno on the second § 1983 claim. The Court denies summary judgment as to the remaining claims.

It is further ordered that the conversion claim is dismissed.

It is further ordered that this case is referred to the Magistrate Judge to conduct a settlement conference. The deadline for filing of the proposed joint pretrial order is 30 days from the settlement conference, assuming settlement is not effectuated.

DATED THIS 10th Day of August 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE